NEW ORLEANS, MOBILE & CHICAGO RAILROAD COMPANY
*v.* W. M. MAULDIN.

[60 South. 211.]

1. CARRIERS. *Delay in shipment. Sufficiency of evidence. Heresay evidence. Failure to object.*

Where heresay evidence is permitted to go to the the jury without objection it should be considered by them in making up the verdict.

2. CARRIERS. *Delay in shipment. Act of God. Sufficiency of evidence.*

Where in a suit for damages against a carrier for delay in the transportation of a shipment, the only evidence to show that the delay was caused by an unprecedented flood was the testimony of a witness that he had been told by the railroad people that such was the case, such testimony was not sufficient to show that the delay was caused by the act of God.

APPEAL from the circuit court of Pontotoc county.

HON. JNO. H. MITCHELL, Judge.

Suit by W. M. Mauldin against the New Orleans, Mobile and Chicago Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Flowers, Alexander & Whitfield* and *J. T. Brown,* for appellant.

There is not one item or proof of negligence on the part of the railroad company. They moved the car promptly from point of origin and when the washout was discovered, and this occurred between the time the car left Pontotoc and the time it reached Louisville, the car was taken back to Ackerman and there turned over to the Illinois Central railroad in order that it might be forwarded to its destination with as little delay as possible. We submit that the railroad company acquitted itself of any charge of negligence when it took the only step any reasonable person would have taken, namely, to forward the stock to its destination via another line with as little delay as possible, and this too at the expense of cutting its proportion of the through rate from a basis of one hundred and ninety five miles of the through haul which it would have received had the car gone on to Laurel, to sixty-eight miles of the haul which it received on the Ackerman delivery.

The railroad company has shown a valid excuse for the little delay charged to it, namely, the storm of unusual violence which washed away part of its roadbed. As said by the Florida court: "Floods of unprecedented violence furnish an excuse even for the loss of, or damage to, the goods and of course they will furnish sufficient excuse for delay." *Norris* v. *Savannah Railroad Co.,* 1 So. 475.

This rule is also laid down in *Pruitt* v. *Railroad Co.,* 62 Mo. 527; *S. A & A. P. Railroad* v. *Barnett,* 27 S. W. (Tex.) 676.

For these reasons we submit that this case should be reversed.

*A. M. Mitchell*, for appellee.

Negligence was abundantly shown by the testimony.

Appellant relies on the fact that there was an unprecedented rain causing a washout on the line and for which there was no avoidance and would consequently exempt appellant from liability.

The burden of proof to establish this defense was upon the appellant. The only testimony introduced upon this point was defendant's witness, John Cruse, who testified that this washout occurred before the car left Pontotoc. Afterwards he testified that there was a hard rain on them at Houston, a point twenty miles south of Pontotoc, and that he did not know when the washout occurred, in fact did not know that there was a washout except from the statement of one of appellant's employees. The burden was upon appellant to establish this if relied upon as a defense. Hutchison on Carriers (3 Ed.), sec. 287.

This proposition was submitted to the jury upon proper instructions, instruction No. 17 of appellant, and the issue found against appellant.

COOK, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Pontotoc county awarding damages to appellee for loss on account of delay to a shipment of live stock.

It is insisted that the record does not show the market value of the stock on the day that it should have arrived at New Orleans, and the market value of the same on the day when it actually arrived at its destination. The following interrogatory was propounded to one of the plaintiff's witnesses, who was the consignee of the stock: "Cross-interrogatory: Please give the value of this carload of stock actually on the day you say you should have received them, and the day you did receive them, also state the price you sold them at. A. Approximately six hundred and fifty dollars, if they had arrived May 16, 1907, whereas arriving after sales day, May 17, 1907, they were held and retailed seven days thereafter, and netted

four hundred and ninety-two dollars and fourteen cents. I attach copy of countersales, marked Exhibit B.'' It seems, therefore, that this contention is not sustained by the record.

The maincontention upon which appellant relies for a reversal of this case is that there was not sufficient proof of negligence on the part of the railroad, and this contention is based upon the theory that the proof shows appellant was prevented by the act of God from delivering the cattle promptly. There was an effort by the railroad company to prove that the delay was caused by an unprecedented rainstorm, resulting in the washing away part of the railroad's right of way. The only evidence upon that subject is the evidence of one Mr. Crew, a witness for defendant below, and the person who was placed in charge of the cattle by the shipper to see that they were fed at Louisville, and promptly and properly reloaded upon the train. It is true that this witness said there was a washout caused by an unusually hard rain, but upon cross-examination it was developed that the witness had no personal knowledge of the washout, but was simply stating what the railroad people told him. This testimony was permitted to go the jury without objection from the plaintiff, and, of course, it should have been considered by the jury in making up their verdict. Analyzing the statements of the witness, it is manifest that his testimony does not prove that there was a washout in the railroad. It only established the fact that the railroad people claimed that there was such a washout.

Again, appellant insists that the peremptory instruction directing the jury to find a verdict in favor of plaintiff below for the sum of sixteen dollars and fifty cents, the amount of overcharge for freight, is error. The contract of shipment provides that the carload of cattle should be delivered in New Orleans for the sum of seventy-five dollars; and, while it may be admitted, if it is shown that the railroad was prevented by the act of God from delivering the cattle over the usual route, and was thereby forced

to deliver the same to another carrier, that it would be acquitted, the answer to this is that there is no evidence in the record showing that the failure upon the part of the railroad to carry out its contract was occasioned by the act of God. The clause in the contract providing, "that, should damage occur for which the company may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed for a stallion or jack two hundred dollars, for a horse or mule one hundred dollars, cattle thirty dollars, or other animals fifteen dollars," has no application to the state of facts developed by the record in this case.

We have given this record a very careful examination, and are unable to reach the conclusion that there was any error in the rulings to which exceptions are taken, and therefore the case is affirmed.

*Affirmed.*